UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| MICHELE L. WRIGHT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:17 CV 2568 ACL |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Deputy Commisioner of Operations, | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM**

Plaintiff Michele L. Wright brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration Commissioner's denial of her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act.

An Administrative Law Judge ("ALJ") found that, despite Wright's severe physical and mental impairments, she was not disabled as she had the residual functional capacity ("RFC") to perform jobs that exist in significant numbers in the national economy.

This matter is pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c). A summary of the entire record is presented in the parties' briefs and is repeated here only to the extent necessary.

For the following reasons, the decision of the Commissioner will be reversed and remanded.

### I. Procedural History

Wright filed an application for benefits under Title XVI on August 28, 2012, claiming that

she became unable to work on June 21, 2011,[1] because of a hernia, major depressive disorder, post-traumatic stress disorder ("PTSD"), schizoaffective disorder, high blood pressure, and high cholesterol. (Tr. 409, 414.) Wright's claim was denied initially. (Tr. 146.) Following two administrative hearings, Wright's claim was denied in a written opinion by an ALJ, dated April 24, 2014. (Tr. 122-38.) On December 23, 2015, the Appeals Council of the Social Security Administration (SSA) granted review and remanded the case to an ALJ for further development and consideration. (Tr. 141-42.) On July 13, 2016, after a third administrative hearing, a second ALJ found Wright was not disabled. (Tr. 9-29.) The Appeals Council denied Wright's request for review on August 13, 2017. (Tr. 1-4.) Thus, the decision of the second ALJ stands as the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481.

In the instant action, Wright argues that the ALJ erred "in failing to weigh or articulate consideration of Dr. Hampton's opinions." (Doc. 14 at 8.) Wright next contends that the ALJ erred in "failing to articulate consideration of evidence of Plaintiff's inability to maintain regular attendance, and in failing to weigh that consistent aspect of all three treating source opinions." *Id.* at 11.

## II. The ALJ's Determination

The ALJ found that Wright has not engaged in substantial gainful activity since her application date of August 28, 2012. (Tr. 14.)

In addition, the ALJ concluded that Wright had the following severe impairments: obesity, a ventral hernia, anemia, mood disorder, psychotic disorder/schizoaffective disorder, PTSD, borderline intellectual functioning, alcohol abuse disorder, and cannabis use disorder. (Tr. 15.)

---

[1]Wright subsequently amended her alleged onset date to August 28, 2012—her filing date. (Tr. 375.)

The ALJ found that Wright did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. *Id.*

As to Wright's RFC, the ALJ stated:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a range of light work as defined in 20 CFR 416.967(b) in that she can lift, carry, push, or pull 20 pounds occasionally and 10 pounds frequently; sit for 6 hours total in an 8-hour workday; stand or walk for 6 hours total in an 8-hour workday; never climb ropes, ladders, or scaffolds; and occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. The claimant is able to understand, remember, and carry out simple instructions and non-detailed tasks; however, she must have only minimal changes in job setting or duties; no contact with the general public; only occasional contact with coworkers and supervisors; and may not perform fast paced production work.

(Tr. 17.)

The ALJ found that Wright's allegations regarding the extent of her limitations were not entirely consistent with the record. (Tr. 22.) In determining Wright's mental RFC, the ALJ indicated that she was assigning "little weight" to the opinions of treating psychiatrist Daniel Murray, M.D.; some weight to the opinion of nurse practitioner Laura Romer, APRN; and great weight to the opinions of treating psychiatrist Luigi Cardella, M.D., and state agency psychologist James Spence, Ph.D. (Tr. 20-22.)

The ALJ further found that Wright was unable to perform past relevant work, but was capable of performing other jobs existing in the national economy, such as cleaner, routing clerk, and mail clerk. (Tr. 23.) The ALJ therefore concluded that Wright has not been under a disability, as defined in the Social Security Act, from August 28, 2012, through the date of the decision. (Tr. 24.)

The ALJ's final decision reads as follows:

> Based on the application for supplemental security income filed on August 28, 2012, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act.

*Id.*

## III. Applicable Law

### III.A. Standard of Review

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings." *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted). "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis." *Id.* (internal quotation marks and citations omitted).

To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the Court must review the entire administrative record and consider:

1. The credibility findings made by the ALJ.

2. The plaintiff's vocational factors.

3. The medical evidence from treating and consulting physicians.

4. The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

> 5. Any corroboration by third parties of the plaintiff's impairments.
>
> 6. The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

*Stewart v. Secretary of Health & Human Servs.,* 957 F.2d 581, 585-86 (8th Cir. 1992) (internal citations omitted). The Court must also consider any evidence which fairly detracts from the Commissioner's decision. *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999). However, even though two inconsistent conclusions may be drawn from the evidence, the Commissioner's findings may still be supported by substantial evidence on the record as a whole. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (citing *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)). "[I]f there is substantial evidence on the record as a whole, we must affirm the administrative decision, even if the record could also have supported an opposite decision." *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal quotation marks and citation omitted). *See also Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 977 (8th Cir. 2003).

## III.B. Determination of Disability

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education and work experience engage in any other kind of substantial gainful

work which exists … in significant numbers either in the region where such individual lives or in several regions of the country."  42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations.  20 C.F.R. § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007).  First, the Commissioner will consider a claimant's work activity.  If the claimant is engaged in substantial gainful activity, then the claimant is not disabled.  20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities."  *Dixon v. Barnhart*, 343 F.3d 602, 605 (8th Cir. 2003).  "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs."  20 C.F.R. § 416.921(b).  These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting.  *Id.* § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987).  "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on her ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. § 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id*. If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id*. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his or her

age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n.5 (8th Cir. 2000). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. §416.920(a)(4)(v). At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

The evaluation process for mental impairments is set forth in 20 C.F.R. §§ 404.1520a, 416.920a. The first step requires the Commissioner to "record the pertinent signs, symptoms, findings, functional limitations, and effects of treatment" in the case record to assist in the determination of whether a mental impairment exists. *See* 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1). If it is determined that a mental impairment exists, the Commissioner must indicate whether medical findings "especially relevant to the ability to work are present or absent." 20 C.F.R. §§ 404.1520a(b)(2), 416.920a(b)(2). The Commissioner must then rate the degree of functional loss resulting from the impairments in four areas deemed essential to work: activities of daily living, social functioning, concentration, and persistence or pace. *See* 20 C.F.R. §§ 404.1520a(b)(3), 416.920a(b)(3). Functional loss is rated on a scale that ranges from no limitation to a level of severity which is incompatible with the ability to perform work-related activities. *See id.* Next, the Commissioner must determine the severity of the impairment based on those ratings. *See* 20 C.F.R. §§ 404.1520a(c), 416.920a(c). If the impairment is severe, the

Commissioner must determine if it meets or equals a listed mental disorder. *See* 20 C.F.R. §§ 404.1520a(c)(2), 416.920a(c)(2). This is completed by comparing the presence of medical findings and the rating of functional loss against the paragraph A and B criteria of the Listing of the appropriate mental disorders. *See id.* If there is a severe impairment, but the impairment does not meet or equal the listings, then the Commissioner must prepare an RFC assessment. *See* 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).

## IV. Discussion

As an initial matter, the undersigned notes that Wright does not challenge the ALJ's findings as to her physical impairments. As such, the Court's discussion will be limited to the evidence and findings regarding Wright's mental impairments.

Wright argues that the ALJ erred in evaluating the medical opinion evidence and in determining Wright's mental RFC.

A claimant's RFC determination is "based on all the evidence in the record, including 'the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'" *Krogmeier v. Barnhart*, 294 F.3d 1019, 1024 (8th Cir. 2002) (quoting *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). Although an ALJ may consider non-medical evidence in making the RFC determination, it still must be supported by at least some medical evidence. *See Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001).

"It is the ALJ's function to resolve conflicts among the various treating and examining physicians." *Tindell v. Barnhart,* 444 F.3d 1002, 1005 (8th Cir. 2006) (quoting *Vandenboom v. Barnhart,* 421 F.3d 745, 749-50 (8th Cir. 2005) (internal marks omitted)). The opinion of a treating physician will be given "controlling weight" only if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other

substantial evidence in [the] record." *Prosch v. Apfel,* 201 F.3d 1010, 1012-13 (8th Cir. 2000). The record, though, should be "evaluated as a whole." *Id.* at 1013 (quoting *Bentley v. Shalala,* 52 F.3d 784, 785-86 (8th Cir. 1997)). The ALJ is not required to rely on one doctor's opinion entirely or choose between the opinions. *Martise v. Astrue,* 641 F.3d 909, 927 (8th Cir. 2011). Additionally, when a physician's records provide no elaboration and are "conclusory checkbox" forms, the opinion can be of little evidentiary value. *See Anderson v. Astrue,* 696 F.3d 790, 794 (8th Cir. 2012). Regardless of the decision the ALJ must still provide "good reasons" for the weight assigned the treating physician's opinion. 20 C.F.R § 404.1527(d)(2).

The ALJ must weigh each opinion by considering the following factors: the examining and treatment relationship between the claimant and the medical source, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, whether the physician provides support for her findings, whether other evidence in the record is consistent with the physician's findings, and the physician's area of specialty. 20 C.F.R. §§ 404.1527(c)(1)-(5), 416 .927(c)(1)-(5).

Wright first argues that the ALJ erred in failing to weigh or consider Dr. Hampton's opinions. Wright saw Dr. Hampton, a licensed psychologist, for a psychological evaluation at the request of the State agency on November 13, 2013. (Tr. 638-43.) Wright had been followed by BJC Behavioral Health for the past year, and was accompanied by her BJC caseworker. (Tr. 638.) She resided with her four younger children and two grandchildren in a transitional housing program. (Tr. 639.) Dr. Hampton noted that, despite her "role as the eldest adult in their home, [Wright] under-functions at times, and relies on her young adult and adolescent daughters and sons for cooking and household upkeep." *Id.* Wright's depressive symptoms included crying spells, fatigue, social withdrawal from even her children, and low motivation. *Id.* She also reported

hallucinations of past trauma, suicidal ideations, self-injury, and a suicide attempt as a young adolescent.  *Id.*   Wright's work history was limited, consisting of brief attempts at working at McDonald's and in housekeeping.  *Id.*   Wright reported a history of childhood sexual abuse between ages nine and twelve by a foster father while she was in foster care.  (Tr. 640.)   She had been diagnosed with schizoaffective disorder, likely based on paranoid and hallucinatory symptoms and depressive periods; and trauma was present in her history of being a victim of sexual abuse.  (Tr. 640.)   Upon examination, Wright's mood was "ok," her working memory was poor, her fund of information was poor, her judgment was adequate to fair, and her insight was fair.  (Tr. 640-41.)   Dr. Hampton administered the Wechsler Adult Intelligence Scale—4th Edition ("WAIS-IV"), which revealed a Full Scale IQ score of 74.  (Tr. 643.)   Wright answered only 1-step problems correctly and was "incorrect and extremely slow to think through 2-step problems."  (Tr. 642.)   Dr. Hampton found that Wright was functioning in the borderline range of intellectual functioning.  *Id.*   She diagnosed Wright with PTSD; recurrent depression with psychotic features; borderline intellectual functioning; and a GAF score of 50.[2]  *Id.*   Dr. Hampton summarized as follows:

> [Wright] is a 41-year-old woman who presents with recurrent depression with psychotic features, superimposed on a history of childhood sexual abuse.   She has a limited work history and is now head of household for her 3 younger children, one young adult daughter, and 2 preschool-age grandchildren.   She presents with marginal functioning, and is in psychiatric and case management services with BJC Behavioral Health.
>
> …Her daily activities were described as variable and impacted by depressive symptoms that include decreased motivation, and she is rather dependent on her

---

[2]A GAF score of 50 indicates "serious symptoms" or "any serious impairment in social, occupational, or school functioning (*e.g.*, no friends, unable to keep a job)."   *See American Psychiatric Ass'n., Diagnostic and Statistical Manual of Mental Disorders* 34 (Text Revision 4th ed. 2000) ("*DSM IV–TR*").

children for assistance…[S]he appears likely to decompensate in increased stressful or work-like settings. She is not considered capable of managing funds independently in her own best interest.

(Tr. 642-43.)

Dr. Hampton also completed a Medical Source Statement of Ability to Do Work-Related Activities (Mental), in which she found Wright had marked limitations in her ability to understand and remember complex instructions, carry out complex instructions, make judgments on complex work-related decisions, interact appropriately with the public, and respond appropriately to usual work situations and changes in a routine work setting. (Tr. 635-36.) Dr. Hampton expressed the opinion that Wright had moderate limitations in her ability to understand, remember, and carry out simple instructions; make judgments on simple work-related decisions; and interact appropriately with supervisors and co-workers. *Id.* She stated that Wright had a moderate limitation in her ability to concentrate; and in her ability to reason due to her borderline intellectual functioning. (Tr. 636.)

The ALJ addressed Dr. Hampton's opinion as follows:

The record shows the claimant underwent a consultative psychological evaluation completed by Karen Hampton, Ph.D. on November 13, 2013. As part of her examination, Dr. Hampton administered the Wechsler Adult Intelligence Scale-IV. The results revealed a Full-Scale Intelligence quotient of 74, placing her within the borderline range of cognitive functioning.

(Tr. 20.) The ALJ did not discuss Dr. Hampton's assessments and conclusions related to how Wright's functioning impacted her activities of daily living as outlined above.

The undersigned finds that the ALJ erred in failing to fully consider Dr. Hampton's findings and opinions. Dr. Hampton's report provided mental status examination findings, cognitive evaluation findings, diagnoses, a summary, and recommendations. (Tr. 638-43.) She also provided a Medical Source Opinion setting out detailed mental limitations she believed

Wright possessed due to her impairments. (Tr. 635-37.) Although Dr. Hampton provided a thorough report and opinions at the request of the State agency, the ALJ did not address Dr. Hampton's report or opinions, other than noting Wright's IQ score placing her within the range of borderline cognitive function.

The Court disagrees with Defendant's contention that the ALJ's failure to address Dr. Hampton's findings and opinions was harmless. Among Dr. Hampton's opinions was her finding that Wright had marked limitations in responding appropriately to usual work situations and changes and was likely to decompensate in work-like settings; and was dependent on her children for assistance with daily activities. (Tr. 643.) Dr. Hampton also noted that Wright was only capable of answering 1-step problems. (Tr. 642, 643.) As Wright points out, this is significant because the ALJ adopted the vocational expert's opinion that Wright could perform jobs that require "one-or two-step instructions" in one job, and greater requirements in the other two jobs. (Tr. 23, 108.) The ALJ's ultimate determination of disability could be affected by consideration of Dr. Hampton's opinions. Thus, the ALJ's analysis was incomplete and this case must be remanded. *See Draper v. Barnhart*, 425 F.3d 1127, 1130 (8th Cir. 2005) (while a deficiency in opinion writing is not a sufficient reason to set aside an ALJ's finding where the deficiency has no practical effect on the outcome of the case, inaccuracies, incomplete analyses, and unresolved conflicts of evidence can serve as a basis for remand).

Wright also argues that the ALJ erred in failing to adequately consider evidence of Wright's inability to maintain regular attendance. She contends that three treating sources—Drs. Murray and Cardella, and Nurse Romer—indicated that Wright would have difficulty maintaining attendance if she attempted full-time work, due to psychologically-based symptoms.

Treating psychiatrist Daniel Murray, M.D. completed a Mental Medical Source Statement

on February 26, 2013, in which he found Wright had marked or extreme limitations in almost every area of functioning. (Tr. 543-44.) He listed her diagnoses as personality disorder NOS, depression NOS, and likely mild mental retardation or borderline intellectual functioning. (Tr. 546.) Dr. Murray expressed the opinion that Wright's psychological symptoms would cause her to miss work three times a month or more. (Tr. 545.)

The ALJ assigned "little weight" to Dr. Murray's opinions, finding them "wholly inconsistent with the objective findings at the exams." (Tr. 20.) The ALJ explained that Dr. Murray repeatedly reported that Wright was doing well, her mood was good, and that her depression and anxiety were "situational related to her living situation, childcare responsibilities and relationship problems with her adult daughter and ex-boyfriend." *Id.* The ALJ also noted that the medical source statement was created at the request of Wright's attorney "in anticipation of litigation." *Id.*

Next, treating psychiatrist Luigi Cardella, M.D., completed a Mental Medical Source Statement on November 11, 2014. (Tr. 996-99.) He listed Wright's diagnoses as recurrent major depressive disorder; alcohol use disorder, in remission; cannabis use disorder, in remission; PTSD; and personality disorder unspecified with cluster B traits. (Tr. 999.) Dr. Cardella found Wright had moderate limitations in most areas of functioning; could not perform in proximity to coworkers without being distracted by them or without distracting them due to exhibition of abnormal behavior; could perform in a setting where supervisors provide simple instructions for non-detailed tasks with no more than four supervisor contacts per day; could focus for periods of thirty minutes before requiring task redirection; and would miss work twice a month due to psychologically-based symptoms. (Tr. 997-98.)

The ALJ indicated she was assigning "great weight" to Dr. Cardella's opinions overall

because they were consistent with his treatment notes, which showed Wright was "primarily concerned about her finances and her children." (Tr. 21.) The ALJ stated that Dr. Cardella's opinions were also consistent with the notes of Wright's case worker, which revealed Wright was able to handle tasks such as enrolling her children in school, advocating for them, and buying them uniforms. *Id.* The ALJ stated that there was "no support for the limitation from Dr. Cardella that the claimant could only have four supervisor contacts per day." *Id.* She did not address the limitation regarding attendance.

Nurse practitioner Laura Romer, APRN, completed a Mental Medical Source Statement on April 6, 2016, in which she expressed the opinion Wright had moderate and marked limitations; could perform in a task-oriented setting where contact with coworkers and the general public is only casual and infrequent; could perform in a setting where supervisors provide simple instructions for non-detailed tasks with no more than four supervisor contacts per day; could focus on simple tasks for fifteen minutes before needing redirection; could work at a pace of 21 to 30 percent below average; and would miss work three times a month or more due to psychologically-based symptoms. (Tr. 756-57.) Ms. Romer listed Wright's diagnoses as major depression with a history of psychosis; PTSD; and borderline intellectual functioning. (Tr. 758.)

The ALJ stated that the limitations found by Ms. Romer were "generally consistent with the evidence of record," but there was "no support for the limitation that the claimant could have no more than four contacts with a supervisor during the workday." (Tr. 21.) She also assigned "little weight" to the finding that Wright would need redirection every fifteen minutes. *Id.* The ALJ noted that Ms. Romer's opinions appeared to be based in large part on Wright's IQ scores, yet Wright has been able to work in the past and has been able to live independently and raise children. *Id.* She concluded that Wright's IQ score alone does not adequately reflect her ability to function,

and does not support a finding of disability.  *Id.*

In discussing and weighing the opinions of Drs. Murray and Cardella and Ms. Romer, the ALJ failed to discuss Wright's attendance limitations.   All three sources found that Wright would miss at least two days of work a month due to psychologically-based symptoms.   This limitation is significant, as the vocational expert testified that, based on his experience, "if an individual is going to be absent two days a month on a long-term continuous basis, they would most likely not be able to maintain competitive level employment."   (Tr. 109.)   The ALJ provided no explanation for her omission of monthly work absences in Wright's RFC.

The medical record provides support for Wright's difficulty maintaining attendance due to her mental impairments.   Wright has received extensive mental health services from BJC Behavioral Health since 2012.   These services include psychiatry treatment, counseling, and the services of a community support worker.   Among the many issues addressed by the BJC staff was Wright's difficulty with reliability due to depression symptoms and her borderline intelligence. A BJC progress report noted that Wright's "main barrier is her unresolved traumatic experience" between the ages of nine and twelve wherein she was sexually abused by her foster father, as well as physically and mentally abused by her foster mother.   (Tr. 586.)   She also suffered from severe depression, anxiety, PTSD, and hearing voices.   *Id.*   BJC case workers assisted Wright in taking her medications, and scheduling and transporting her to doctor appointments.   *Id.*   The record notes that Wright repeatedly expressed an inability to take the bus without assistance, and relied on her caseworker to drive her to appointments.   (Tr. 892.)

The ALJ concluded that Wright had the mental RFC to:

understand, remember, and carry out simple instructions and non-detailed tasks; however she must have only minimal changes in job setting or duties; no contact with the general public; only occasional contact with coworkers and supervisors; and may not perform fast paced production work.

(Tr. 17.)   As support for this determination, the ALJ stated as follows:

> The claimant is able to care for four children, seek shelter and the treatment notes indicate she is only situationally depressed.   She is often in a "good mood or feeling well" as evidenced by the treatment notes of Dr. Murray.   The claimant continues to care for her children and grandchildren, providing shelter and food, and continues to progress in her current living situation.   Clearly, the treatment notes of Dr. Murray fail to support his medical source statement of extreme and marked limitations, more appropriate are the findings of Dr. Cardella and Ms. Romer and Dr. Spence whom are more fully credible and candid in their opinions. In sum, the above residual functional capacity assessment is supported by the treatment notes of the claimant's physicians, the claimant's own testimony, and the record as a whole.

(Tr. 22.)

The ALJ's RFC determination is not supported by substantial evidence.   As previously discussed, the ALJ erred in failing to properly evaluate and weigh the evidence and opinions of Dr. Hampton.   The ALJ also failed to discuss the limitation found by three providers regarding Wright's expected work absences.

Further, in weighing the medical opinion evidence and determining Wright's RFC, the ALJ relied on the inaccurate finding that Wright's symptoms were caused by situational factors. Also integral in the ALJ's determination was the fact that Wright was able to care for her children. Contrary to the ALJ's findings, there is no indication in the record that Wright's symptoms were merely situational.   No mental health provider diagnosed Wright with situational depression. Rather, her treating providers noted Wright's long-standing diagnoses of major depressive disorder with psychotic features, and PTSD from past sexual abuse.   They prescribed and adjusted psychotropic medications for these impairments.   The fact that treating providers routinely noted psychosocial factors such as homelessness and childcare as affecting Wright's symptoms does not equate to a finding that Wright's depression was purely situational.

Wright maintained custody of her children and grandchildren as the ALJ noted; however,

the record reflects she had difficulty caring for the children. As noted by Dr. Hampton, Wright relied on her children for assistance with many household tasks. (Tr. 639, 643.) Wright testified that the children missed school often because she was unable to get them ready due to her depression. (Tr. 97.)

In sum, the ALJ failed to consider significant findings of treating providers, and substituted her own opinions in determining Wright's mental RFC. Thus, the ALJ's determination lacks the support of substantial evidence.

## Conclusion

The ALJ erred in weighing the medical opinion evidence, and determining Wright's mental RFC. Because the ALJ's opinion finding Wright not disabled is not supported by substantial evidence on the record as a whole, it is reversed and this matter is remanded for further proceedings consistent with this opinion. Upon remand, the ALJ shall properly weigh the medical opinion evidence, and formulate a new mental RFC based on the record as a whole.

/s/Abbie Crites-Leoni
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 1st day of March, 2019.